UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ROBERT DOYLE ROHL,

    Plaintiff,

v.                                                            Case No.  2:16-cv-176
                                                                            HON. PAUL L. MALONEY

MATT IMMEL, et al.,

    Defendants.
_____/


**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by state prisoner Robert Doyle Rohl pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that he was removed from his cell with the use of a chemical agent and placed in soft restraints on two occasions, for a total of 35 hours.  Plaintiff alleges that he was not allowed to shower or fully clean the chemical agent from his eyes and body.  Plaintiff was placed back into his cell with the chemical agent odor and residual chemical agent remaining on the cell walls, the restraints were too tight, and he was refused the use of the toilet.  Defendants filed a motion for summary judgment (ECF No. 40).  Plaintiff filed a response (ECF No. 48).

        Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to

interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

2

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). In numerous cases, the Sixth Circuit has held that restraints were penologically justified where in light of the inmate's disruptive behavior, the inmate continued to pose a threat. *See Hayes*, 1994 WL 28606, at *1 (significant threat of further destructive behavior justified application of top-of-bed restraints against inmate); *Harris v. Ohio Dep't of Rehab/Corr.*, No. 91-3920, 1992 WL 56999, at *2 (6th Cir. Mar. 24, 1992) (requiring inmate to wear restraint belt during visits was penologically

3

justified); *Boswell v. Vidor*, No. 89-2372, 1990 WL 143501, at *1 (6th Cir. Oct. 2, 1990) (placing inmate in full restraints for twelve hours was justified where inmate had disobeyed a direct order by repeatedly refusing to return plastic gloves given to him for cleaning his cell); *Syncate-El v. Toombs*, No. 92-1421, 1992 WL 301270, at *2 (6th Cir. Oct. 21, 1992) (use of body chains during non-contact visits was justified in light of significant threat of further assaultive behavior given inmate's history of disruptive behavior). *See Rivers*, 1995 WL 603313, at *2 (top-of-bed restraints were appropriate even after inmate discontinued his earlier abusive, disruptive, and threatening behavior).

However, in *Barker v. Goodrich*, No. 10-3195, slip op. at 8 (6th Cir. Aug. 10, 2011), the Sixth Circuit held that placing inmate in uncomfortable restraints for 12 hours, during which he missed one meal and did not have access to water or a toilet rose to the level of an Eighth Amendment violation. *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730 (2002) (finding an Eighth Amendment violation in the handcuffing of a prisoner to hitching post for seven hours in the hot sun without access to water). The court also held that the right was clearly established in 2007. *Id.*, slip op. at 9-10.

Defendants Immel and Harris assert that Plaintiff never informed them that he was in severe pain from the tight restraints or that he suffered from respiratory distress from the chemical agent odor. Defendants state that Plaintiff was placed in soft restraints that restricted his movement. According to Defendants, the restraints did not prevent Plaintiff from eating, drinking, or using the toilet and sink in his cell. Lieutenant Kienitz reviewed the application of restraints and reported to Defendant Immel that the restraints were applied properly and that Plaintiff was being monitored by health care personnel and staff. Defendants maintain that Plaintiff remained

4

uncooperative. Defendants argue that despite Plaintiff's assertion that he soiled himself while restrained, staff conducted rounds every 30 minutes. Therefore, even if he could not use the toilet he would never have to wait longer than thirty minutes before seeking permission.

Defendants Young and O'Neil returned Plaintiff to his cell 26 hours after the chemical agent was used. Officers Young and O'Neil indicate that they did not smell any residual chemical agent odors at that time. No other prisoners in the unit complained about lingering chemical agent odors. Defendants explain that every time a chemical agent is dispersed into a cell, the prisoner is removed and the ventilation system is purged. It generally takes 10 to 15 minutes to clear a cell of the chemical agent. The manufacturer of the chemical agent states that most individuals will experience complete relief from a chemical agent within one hour.

When Plaintiff was returned to his cell, he was given new clothing and provided with rags and disinfectant to clean any remaining chemical residue in his cell. Plaintiff accepted a food tray one hour after returning to his cell. Plaintiff was observed kicking his cell door with his foot and banging his head on his cell door. Officer Young issued Plaintiff a misconduct for destruction or misuse of State property. Plaintiff was found guilty of the misconduct. Soon after Plaintiff was observed being disruptive, officers found him lying on the floor of his cell bleeding from his mouth/nose area. Officers that arrived on the scene did not smell chemical agent at the time they entered Plaintiff's cell.

Plaintiff has presented a different version of the events that took place after he was sprayed with a chemical agent. Plaintiff asserts that once he was sprayed with a chemical agent, he immediately complied with all orders. Plaintiff complains about the events that happened after he was sprayed with a chemical agent on January 27, 2016. (ECF No. 41-2,

5

PageID.170). Plaintiff asserts that after he was removed from his cell and strip searched, a nurse made an unsuccessful attempt to flush the chemical agent from Plaintiff's eyes. Plaintiff was placed in soft restraints. Plaintiff states that he was fully compliant and could not open his eyes. Plaintiff asked for the nurse to flush out his eyes, but that request was refused. Plaintiff was then placed in cell number 227, which was a different cell than the one in which a chemical agent was dispersed.

Plaintiff was unable to open his eyes and his skin felt burned from the chemical agent. Plaintiff asserts that his ability to wash his skin, use the bathroom, eat, and sleep were hindered due to the tightness of the restraints. Plaintiff states that Defendant Immel told him that the restraints would be removed in two hours. Plaintiff stayed in restraints for over 13 hours. Plaintiff received cuts and bruises from the restraints because they were never loosened during that time period.

On January 28, 2016, Plaintiff awoke to orders from Defendants Young and O'Neil to "cuff-up" because he was returning to cell number 138 where the chemical agent has been sprayed. Plaintiff states that he returned to the cell at 10:00 am. Plaintiff observed chemical agent residue on the cell walls and smelled the chemical agent odor. When asked if the cell could be cleaned, Plaintiff was told "no" by both Defendants. Plaintiff had trouble breathing and began to hyperventilate. Defendants did nothing.  At 12:30 pm, Plaintiff was found unconscious on the cell floor. When Plaintiff awoke, he was in handcuffs and there were multiple officers in his cell. P.C. Prunick was holding a video recorder. Plaintiff asserts that everyone was coughing and gagging from the chemical agent odor inside the cell.  Plaintiff stated that he was taken to the nurses' station. When Plaintiff stated that he did not want to return to that cell because he could

6

not breathe, Officer Harris said "ok" and directed Plaintiff to the shower. P.C. Prunick stopped his video recorder at that time.

While he was still in the shower stall at approximately 1:50 pm, a move team entered and placed him in soft restraints. Plaintiff states that he was fully compliant, but despite his protests he was placed back in cell number 138. This move was again video recorded. Plaintiff states that he continued to suffer from respiratory distress and pain from the restraints. A nurse checked the restraints that evening at approximately 8:40 pm and told the officers to loosen the restraints. The restraints were loosened and Plaintiff remained in restraints until about 11:50 am on January 29, 2016. Plaintiff states that he remained in restraints for 22 hours, despite being fully compliant. Plaintiff states that he was denied a shower for three days after he was initially sprayed with a chemical agent. Plaintiff asserts that he was denied a mattress for 15 days and forced to sleep on a concrete floor. Plaintiff states that he was denied paper and writing instruments.

In addition, Plaintiff has presented the affidavit of prisoner Jeff Schaefer, who worked as the administrative segregation porter in Birch Unit. (ECF No. 48-3, PageID.345). Prisoner Schaefer observed Plaintiff moved while in restraints in the unit. When Plaintiff was moved back to cell number 138, Schaefer was told to stay in the porter's closet until the move was completed. Schaefer asked officer Karr if he wanted him to clean the cell first and Karr stated: "Rohl is an asshole, let him live with it." (Affidavit paragraph 4). Schaefer stated that Plaintiff was repeatedly denied cleaning supplies. Schaefer heard Plaintiff complaining about breathing difficulties and burning skin. The Defendants responded by stating "maybe you'll think twice before doing that again" and "did you learn your lesson yet?" Schaefer heard the Defendants

7

"getting their stories together and laughing about Mr. Rohl's mistreatment." Schaefer states that Plaintiff never received cleaning supplies.

In the opinion of the undersigned, a question of fact exists regarding whether excessive force was used in continuing to expose a Plaintiff to a chemical agent, which caused him to pass-out, refusing to provide Plaintiff with a shower to wash chemical agent from his eyes and skin, and by placing Plaintiff in tight restraints for a prolonged period of time.

Defendants alternatively moved for dismissal based upon qualified immunity. However, qualified immunity is not appropriate where there exists a question of fact on the issues presented. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the Plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.* In the opinion of the undersigned, questions of fact exist that preclude qualified immunity.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 40) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 26, 2018